McCOWEN v. THE SISTERS OF MOST PRECIOUS BLOOD OF ENID et al.

No. 34854. Feb. 10, 1953.

Rehearing Denied Feb. 24, 1953.

*253 P. 2d 830.*

Leon J. York, Brown Moore, and Preston Moore, Stillwater, for plaintiff in error.

A. R. Swank, A. R. Swank, Jr., and E. C. Swank, Stillwater, for defendants in error.

JOHNSON, V.C.J. The parties appear in the same order as in the trial court and will be referred to herein as they there appeared.

This is an action by Mrs. George B. McCowen against the Sisters Adorers of the Most Precious Blood of Enid, a corporation, and Sister M. Walburga. The record discloses that the defendant Sisters Adorers of the Most Precious Blood was the lessee and operator of the Stillwater Municipal Hospital. The other defendant, Sister M. Walburga, was employed as one of the nurses.

Plaintiff's evidence was that on May 30, 1947, plaintiff was admitted to defendant's hospital for the purpose of surgery by her personal physician, Dr. Howard L. Puckett. She was prepared and taken to the operating room by nurses employed by the defendant corporation and placed upon an operating table where she was given a "spinal block" by her physician. After administering the anesthetic, he left plaintiff in charge of the nurses and went into an adjoining room to scrub his hands in preparation for the operation. During his absence, and without any instructions from him but in line of duty, the nurse, Sister Walburga, proceeded to place plaintiff's legs in devices commonly referred to as stirrups.

These instruments were attached on each side of the foot or lower end of the operating table and were held in place by a set of screws and could be removed from the table, or raised or lowered to accommodate the size of the patient. They were designed in such a way that plaintiff's legs, from her hips to her knees, were held in a vertical position while the calves of her legs were permitted to rest in the trough-like devices and extend in a horizontal position. When plaintiff's legs were placed in the stirrups, the lower end of the table was let down by means of a screw type crank which permitted the lower part of her back to extend over the end of the table. When the drop leaf of the table was let down, the entire weight of the lower part of the plaintiff's body was supported by the stirrups. While plaintiff was in this position, Mrs. Hanson, the surgical nurse, observed that the stirrups were improperly attached, or were in reverse order, and suggested that Sister Walburga change them so that they would be more comfortable and would not interfere with the patient's circulatory system. Without raising the drop leaf end of the table, Sister Walburga proceeded to change the stirrups and, in doing so, permitted Mrs. McCowen's legs to fall to the floor which caused her body to slide forward over the end of the table. The fall allegedly caused severe bodily injuries, or injuries to plaintiff's back.

After the adduction of all the evidence of the parties, the trial court sustained a demurrer to plaintiff's evidence against the hospital and directed a verdict for the defendant hospital on the ground that Sister Walburga was not an agent of the hospital, but was the agent of Dr. Puckett, the operating surgeon, at the time of the accident, but submitted the question of Sister Walburga's negligence to the jury. A verdict of $8,000 was returned against her. Motions for a new trial were filed by each of the parties. Plaintiff's motion was overruled but a new trial was granted Sister Walburga on the theory

that plaintiff's counsel had made a prejudicial remark to the jury during his closing argument. It is from this action of the trial court that plaintiff appeals.

Plaintiff seeks reversal on two propositions. First, that the trial court erred in sustaining a demurrer to plaintiff's evidence against the defendant hospital and in directing a verdict in its favor, and, second, error of the court in granting Sister Walburga a new trial and vacating the judgment rendered against her.

Defendant hospital contends that the codefendant, Sister Walburga, was a general employee of the hospital and was temporarily loaned to Dr. Puckett and at the time of the accident was working under his directions and control, by reason of which the Doctor and the nurse, whose negligence caused the injury, were responsible but not the hospital. It was further contended that Dr. Puckett was present in the operating room and discovered the stirrups were placed in reverse position and directed Sister Walburga to change them. On the other hand, plaintiff contends that Dr. Puckett had no right to select the nurses to help him; that if their services were unsatisfactory he could not discharge them, but had to accept the ones that were assigned to him by the hospital, and that he could either use them or walk out and take his patients elsewhere. In this connection, it was shown by the evidence that the nurses were trained to place the patients on the operating table and to adjust the stirrups and that it was part of their routine duties as nurses.

The crux of plaintiff's first proposition is that an issue of fact on the question of agency was raised by the pleadings and evidence and that the court erred in not submitting the question to the jury under proper instructions; that is, as to whether at the time of the accident, Sister Walburga was an agent and employee of Dr. Puckett and under his control, or was she an agent and servant of the hospital?

Plaintiff and Dr. Puckett testified that Dr. Puckett, after administering the spinal block, left the operating room and went into an adjoining room to "scrub up" preparatory to performing an operation upon plaintiff; that at the time of the accident Dr. Puckett was not actually directing or supervising the work of Sister Walburga, but that when the accident occurred she was performing her routine duties as a nurse for the hospital in preparing the patient for the operation. Dr. Puckett testified further that he had no choice regarding the selection of nurses to assist him in performing surgical operations in this hospital; that he had to accept them as they were assigned or walk out. The defendants' evidence was in conflict with that of the plaintiff's and Dr. Puckett's. The codefendant, Sister Walburga, and Mrs. Hanson, the surgical nurse, testified that Dr. Puckett was present and directed Sister Walburga to change the stirrups. Other witnesses for the defendant testified that Dr. Puckett had the right to select the nurses who were to assist him and the right to discharge them in the event they were unsatisfactory and that such nurses were under his control.

Obviously, there is a conflict in the testimony on the issue of agency which is a question of fact. It is a fundamental principle of our system of jurisprudence in trials by jury that all questions of law must be decided by the court, and all questions of fact, and those depending upon disputed testimony, by the jury; and, when the facts pertaining to the existence or nonexistence of an agency are conflicting, or conflicting inferences may be drawn from the evidence the question presented is one of fact for the jury, or for the court as the trier of fact if the case is tried without a jury. And even though the evidence is not full or satisfactory, it is the better practice to submit the question to the triers of fact. 2 Am. Jur., Agency, §454, p. 359. (See Oklahoma cases cited in footnotes.) Applying this rule to the case at bar, it was error for the trial court

to refuse to submit the issue of the existence or nonexistence of agency to the jury under proper instructions and sustain the demurrer to plaintiff's evidence and direct a verdict for the hospital.

However, defendant hospital argues and quotes at length from the evidence to show that Dr. Puckett was in full charge of the operation at all times, from the time the patient was taken into the operating room until she was removed therefrom, and asserts that if she sustained any injury as a result of her legs falling after the spinal block, it was the responsibility of the operating surgeon who was directly in charge; that the undisputed evidence shows that Dr. Puckett was the plaintiff's family physician; that she employed him to perform a corrective operation; that he was a member of the hospital staff and made arrangements for the operation the day before with the hospital authorities; that the plaintiff went to the hospital the evening before the operation; that the following morning she was taken to the operating room and Mrs. Hanson and Sister Walburga were made available to the surgeon as his assistants in the performance of the operation; that the plaintiff patient was prepared for the operation under the doctor's direction; that he administered the spinal injection which immobilized the lower part of her body and made her helpless and immune to pain; that Dr. Puckett admitted that these nurses were assigned to him and that he accepted their services; that he then turned his back and went into the scrub room, which was not more than five to ten feet from the operating table, with the door open; that while the incident of changing the stirrups occurred, the doctor was standing over the patient, but that whether he was or not, the same rule would apply; that Dr. Puckett had started the operation; that he was in charge at all times; that the hospital authorities had no supervisory or controlling power over the patient from the time she was taken into the operat-

ing room until she was wheeled out; that under the facts Sister Walburga was, in the performance of this operation, the agent of the doctor, and not the hospital; that Dr. Puckett was the overmaster and was responsible. The cases relied on to sustain this argument are: Aderhold v. Bishop, 94 Okla. 203, 221 P. 752, 60 A.L.R. 137; Denton v. Yazoo & M. V. R. Co., 52 U.S. 141; Emerson v. Chapman, 138 Okla. 270, 280 P. 820; Flower Hospital v. Hart, 178 Okla. 447, 62 P. 2d 1248; Hull v. Enid General Hospital Foundation, 194 Okla. 446, 152 P. 2d 693; Letcher v. Skiver, 99 Okla. 269, 226 P. 1029; Randolph v. Oklahoma City General Hospital, 180 Okla. 513, 71 P. 2d 607, and Tulsa Hospital Association v. Juby, 73 Okla. 243, 175 P. 519.

The rule deduced from the above cases is that where a hospital nurse, although not in the regular employ of the operating surgeon, is under his special supervision and control during the operation, the relationship of master and servant exists and the surgeon is liable under the doctrine of respondeat superior. Aderhold v. Bishop, supra. This rule is subject to certain exceptions as in Flower Hospital v. Hart, supra, wherein we said:

"For defendant (the Hospital) to avail the plea of over-mastership, or subjection to the surgeon, which is settled law, it must meet the requirements that the surgeon 'actually exercised supervision and control over the servants' of the hospital. (Thomas v. Great Western Mining Co., 150 Okla. 212, 1 P. 2d 165), at the time of the negligence, or lack of care, to 'protect its patients in such manner as their condition may render necessary.'" (Emphasis ours.)

and in Hallinan v. Prindle, 17 Cal. App. 2d 656, 62 P. 2d 1075, citing Aderhold v. Bishop, supra, it was held that a surgeon could not be held responsible for the negligence of a hospital nurse in performing her duties in the operating room unless the surgeon exercising ordinary care could or should have been able to prevent injuries caused by the

nurse's negligence. In the body of the opinion, it was said:

" 'But it has been held that where a hospital nurse although not in the regular employ of an operating surgeon, is under his special supervision and control during the operation the relation of master and servant exists, and that the surgeon is liable under the doctrine of respondeat superior for the nurse's negligence.' Aderhold v. Bishop, 94 Okla. 203, 221 P. 752. *We think it plain from the evidence that the acts of preparation, performed by Miss McKinnon were not done under the special supervision and control of Dr. Prindle; on the contrary, as we have seen, they were performed by her in his absence. That they were done at his request or direction has no significance, since she was merely attending to duties devolving upon her as an employee of the hospital; and whether performed by her at the direction of an officer of the hospital made in pursuance of a previous notification by the doctor (as they well could have been), or upon the request of the doctor made directly to her, cannot affect the legal situation.* (Emphasis ours.)

It is a matter of common knowledge that the preparation of a patient for surgery in the hospital operating room is usually done by the hospital's nursing staff and the charges therefor are a part of the hospital fees and not the surgeon's fee. If the evidence of the plaintiff and her doctor, under proper instructions, had been submitted to the jury and the jury believed it, then the negligence of the nurse which caused the injury occurred during the absence of the doctor and during the preparation of the hospital's patient for surgery by her physician and certainly the above emphasized rules would be applicable in the case at bar.

Plaintiff's second proposition that the court erred in granting defendant Sister Walburga a new trial and vacating the judgment rendered against her is without merit.

The record discloses that the motion for a new trial was sustained because plaintiff's counsel in his argument to the jury said:

"Although the hospital was out of it, that if they awarded plaintiff a judgment they should award her a substantial one, that they could collect it without taking money off of anybody."

The jury may have been prejudicially influenced against the defendant Nurse Walburga by this irrelevant remark of counsel which clearly was calculated to convey to the jury the knowledge that the nurse was protected against loss. It was therefore not error to grant such defendant a new trial. See Beatrice Creamery Co. v. Goldman, 175 Okla. 300, 52 P. 2d 1033; Hankins v. Hall, 176 Okla. 79, 54 P. 2d 609 and Berry v. Park, 185 Okla. 118, 90 P. 2d 425, and authorities cited therein.

The cause is reversed and remanded, with directions to vacate the order directing a verdict for the defendant hospital and reinstate the cause, overrule the demurrer to plaintiff's evidence and grant plaintiff a new trial. The action of the trial court granting Sister Walburga a new trial is affirmed.

HALLEY, C.J., and WELCH, CORN, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.